IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA BERRY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHICAGO TRANSIT AUTHORITY, )<br>)<br>Defendant. ) | Case No. 08 C 5624<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia Berry ("Berry") sued Defendant Chicago Transit Authority ("CTA"), alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The CTA moved for summary judgment. For the following reasons, the Court grants the CTA's Motion for Summary Judgment.

## STATEMENT OF UNDISPUTED FACTS[1]

**I.     Background**

The CTA employed Berry as a full-time Temporary Capital Carpenter from June 10, 2002 until January 24, 2009. (Berry 56.1 Resp. ¶¶ 2, 39.) She was also a member of the Carpenter's Union. (*Id.* ¶ 39.)

On January 18, 2006, while on break from work, Berry went into the break area to play cards. (*Id.* ¶ 14.) Berry alleges that Phillip Carmichael, her co-worker, grabbed her breasts, lifted her up and rubbed his lower torso against her, and pushed her into a fence. (*Id.* ¶ 13.) Several days after

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Berry's Response to CTA's Statement of Material Fact have been abbreviated to "Berry 56.1 Resp. ¶ ___."; and citations to CTA's Response to Berry's Statement of Additional Facts have been abbreviated to "CTA Resp. Berry Add. Facts ¶ ___."

this incident, Berry felt pain in her back during work and reported this to her supervisor, Michael Gorman ("Gorman").[2] (*Id.* ¶ 15.)

## II. 2006 Lawsuit

As a result of this incident, Berry brought suit in the Northern District of Illinois against the CTA, alleging hostile work environment, sex discrimination, and retaliation. (Berry 56.1 Resp. ¶ 12.) On May 3, 2007, Judge Conlon granted the CTA's motion for summary judgment on all claims. *Berry v. Chicago Transit Auth.*, No. 06 C 3640, 2007 WL 1317139 (N.D. Ill. May 3, 2007) (Conlon, J.). Berry appealed this decision to the Seventh Circuit.

The facts before Judge Conlon and the Seventh Circuit involved the January 18, 2006 incident and the subsequent investigation. The Court summarizes these facts here because they are relevant to this lawsuit for the purpose of res judicata. *See Berry v. Chicago Transit Auth.*, 618 F.3d 688 (7th Cir. 2010).

When Berry complained to Gorman after the incident, he responded by calling her a "pain in the butt" and stated that the CTA could fire her if she filed charges against Carmichael. *Id.* at 689. Gorman nevertheless contacted the CTA's equal employment opportunity investigator, Thelma Crigler ("Crigler"), to investigate the incident. *Id.* Berry prepared a statement summarizing the incident and when she gave it to Gorman, he told her that other employees stated that Berry was sitting in Carmichael's lap immediately before the incident, which Berry disagreed with. *Id.*

On the day after the incident, Berry called the police to the CTA facility, complaining about Carmichael's alleged attack. *Id.* After speaking with Berry, Carmichael, and Gorman, the police

---

[2] The CTA's investigation of Berry's allegations concluded that there was insubstantial evidence of sexual harassment, based partly on the fact that multiple witnesses said that Berry was sitting on Carmichael's lap at the time of the incident. (Berry 56.1 Resp. ¶ 16.)

2

determined that Berry was the aggressor. *Id.* Later that same day, Gorman told Berry to stay away from the break area while Crigler's investigation was pending; Gorman did not ask Carmichael and the other employees who witnessed the incident to stay away from the break area as well. *Id.* When Berry asked Gorman if he also told the other employees to remain away from the break area, he said "Women aren't the only ones who can file sexual harassment." *Id.*

After interviewing the employees who witnessed the incident, Crigler determined that there was no evidence of sexual harassment. *Id.* Specifically, Crigler found that Berry was at fault and Carmichael lifted up Berry to move her away from him. *Id.*

As a result of the incident, Berry suffered a lower back injury and headaches. *Id.* She sought "injured-on-duty" status, which would have entitled her to receive worker's compensation, but the CTA instead placed her on sick leave. *Id.*

Taking into account these facts, on August 23, 2010, the Seventh Circuit affirmed in part and reversed in part Judge Conlon's decision. The Seventh Circuit affirmed the dismissal of Berry's discrimination claim because there was no evidence of an adverse employment action. Specifically, with respect to Berry's claim that Gorman discriminated against her by not placing her on injured-on-duty status, the Seventh Circuit found that there was no adverse employment action because Berry presented no evidence that she was entitled to worker's compensation. *Id.* at 692. But the Seventh Circuit reversed the district court's decision to grant summary judgment on the hostile work environment claim because, in a light favorable to Berry, a "reasonable factfinder [could] conclude

that Gorman, acting as a manager, maliciously thwarted any legitimate investigation, and that the CTA was therefore negligent or worse in responding to her report of harassment."[3] *Id.*

After remanding back to the district court, the case went to trial and the jury found in favor of the CTA. Berry has once again appealed the entry of judgment in favor of the CTA.

**III. Current Case**

In contrast, the case pending before this Court involves the CTA's placement of Berry in "administrative holding" for three years to recover from the January 18, 2006 incident, and her eventual termination pursuant to CTA policy for not integrating back into the work force in a timely manner. (Third Am. Compl. ¶ 10.) Specifically, Berry claims that the CTA terminated her unjustly because of her sex and retaliated against her for "oppos[ing]" discrimination.[4] (*Id.* ¶ 10; Berry 56.1 Resp. ¶ 6.) At her own deposition, however, Berry was unable to explain exactly how she "opposed" discrimination. (Berry 56.1 Resp. ¶ 7.)

The vast majority of Berry's additional Local Rule 56.1 factual statements are entirely irrelevant to the issues before this Court. Facts about the January 18, 2006 incident and the CTA's investigation of Berry's allegations regarding that incident were considered by Judge Conlon in

---

[3] The Seventh Circuit also found that Berry "forfeited" her claim of retaliation because Berry's Complaint did not allege retaliation and she cannot present new claims in her brief opposing summary judgment. *See Berry*, 618 F.3d at 693.

[4] Berry's EEOC charge states that "*Since* June 21, 2006, I have been retaliated against by being harassed, denied medical benefits and being denied employment." (Third Am. Compl., Ex. 1.) (emphasis added). Her deposition testimony, however, indicated the EEOC charge allegations were incorrect because it was supposed to say that she has not been harassed at all since June 21, 2006. (Berry Depo. 56:14-57:1.) In other words, it is undisputed that no sexual harassment occurred after June 21, 2006. (Berry 56.1 Resp. ¶ 9.) As to the allegations of sexual harassment before June 21, 2006, because Berry filed her Complaint in the 2006 case on July 7, 2006, allegations regarding this harassment could have, and should have, been brought at that time. Accordingly, Berry is now barred from asserting any harassment claims before June 21, 2006. *See Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) (res judicata bars "not only those issues which were actually decided in a prior suit, but also all issues which could have been raised in that action").

4

2006, and have no bearing on Berry's claims here. Accordingly, the Court ignores Berry's facts that impermissibly cross over into the 2006 case. (*See, e.g.,* Berry Add. Facts ¶¶ 65-78.)

### A. "Area 605" Administrative Holding

At the CTA, eligible union employees who are not working due to approved medical leave can be placed in an administrative holding area known as "Area 605." (Berry 56.1 Resp. ¶ 23.) Berry, as a carpenter, was eligible for placement in Area 605. (*Id.* ¶ 24.) This temporary medical disability holding area allows employees time to recover from the medical conditions that have prevented them from performing their normal job responsibilities. (*Id.* ¶ 25.) It also relieves CTA departments of the burden of overseeing employees with long-term medical disabilities and allows the departments to fill the employee's vacant position. (*Id.*)

A CTA employee is not eligible for Area 605 until sixty days after the first day that the employee was absent from work. (*Id.* ¶ 26.) The injured employee's department determines when to request that the employee be sent to Area 605. (*Id.* ¶ 27.) Until this request is made, the employee's job remains open for the employee to return to upon recovery. (*Id.*) The CTA's Disability Review Committee approves or denies a Area 605 request. (*Id.* ¶ 28.)

Once in Area 605, employees are no longer a part of their previous department; they fall under the responsibility of the CTA's Benefits Services in the Human Resources Department. (*Id.* ¶ 31.) An employee can leave Area 605 and return to her previous department if there is an open position in the employee's "job classification" and if she receives clearance from the CTA medical department. (*Id.* ¶ 30.)

Larry Wall ("Wall"), the General Manager of Benefits Services since June 20, 2001, oversaw Area 605. (*Id.* ¶ 32.) In this capacity, Wall was responsible for verifying employees' eligibility for

the temporary disability area, facilitating employees' transition back to work, and when necessary, separating employees who had remained in Area 605 longer than the time allowed. (*Id.*)

For employees injured from work-related activities while on duty, the CTA has discretion to allow an employee to stay in Area 605 until resolution of that employee's worker's compensation claim. (*Id.* ¶ 29.) A full-time employee not injured while on duty or with a closed worker's compensation claim is eligible to remain in Area 605 for up to two years from the first day of absence from work, and can request a one year extension to stay beyond that. (*Id.* ¶ 29.)

From January 24, 2006 until her administrative separation on January 24, 2009, the CTA employed Berry but she was off work on approved disability leave. (*Id.* ¶ 40.) Berry requested the approved disability leave as a result of the January 18, 2006 incident, and while on leave she did not work. (*Id.*) From her last day of work in January 2006 until her discharge in January 2009, Berry never asked the CTA to return to work; she only spoke to a doctor about her physical ability to start working again. (*Id.* ¶ 41.)

The CTA placed Berry in Area 605 on February 12, 2008. (*Id.* ¶ 43.) In accordance with Area 605 procedures, she was allowed to remain in that temporary disability holding area for two years after her first date of absence from work, which was January 24, 2006. (*Id.*) Berry provided medical documentation and the CTA permitted her to remain in Area 605 for a third year, until January 24, 2009. (*Id.*)

Between Berry's last day of work on January 24, 2006, and placement in Area 605 on February 12, 2008, her department kept her position open. (*Id.* ¶ 44.) During this time, if Berry had requested to return to work and was medically cleared to do so, she could have regained her previous position. (*Id.*)

Wall separated Berry from Area 605 on January 24, 2009, three years after her initial date of absence. (*Id.* ¶ 53.) This was in accordance with the rule that full-time employees cannot remain in Area 605 beyond three years. (*Id.*)

B.   **Worker's Compensation**

Wall oversaw the CTA's health insurance plans. (*Id.* ¶ 34.) He also managed the CTA's employee benefits, including short-term disability and worker's compensation through a third-party provider, Sedgwick CMA.[5] (*Id.*) Sedgwick has been the CTA's provider since July 2002 and it reviews worker's compensation claims. (*Id.* ¶ 35.)

Berry filed a worker's compensation claim against CTA for injuries sustained from the January 18, 2006 incident. (*Id.* ¶ 46.) Berry completed an Injury on Duty form on January 19, 2006. (*Id.* ¶ 47.) Berry's supervisor, Gorman, filed a Supervisor's Report of Employee Injury on Duty on March 20, 2006 and forwarded it to Segwick. (*Id.*) Gorman recommended in his report that the CTA deny Berry worker's compensation because the incident occurred in a break room while Berry was not working.[6] (*Id.*) Sedgwick also independently denied Berry's worker's compensation claim because it found that Berry's injury occurred while she was not working. (*Id.* ¶ 48.)

Finally, Wall denied Berry's worker's compensation claim. (*Id.* ¶ 49.) In coming to this decision, Wall consulted with the CTA's worker's compensation attorneys, reviewed Gorman's report, and evaluated Sedwick's determination that Berry's injuries were not related to work. (*Id.*)

---

[5]   Berry's response to fact ¶ 34 offered extraneous facts and did not controvert CTA's statement. As a result, the fact is deemed admitted under Local Rule 56.1.

[6]   Berry denies this fact and states that Gorman allegedly lied in his report when he stated that Berry was not the victim of assault but rather the aggressor. This fails to satisfy the requirements of Local Rule 56.1, where the responding party must concisely controvert the precise statement set forth by the opposing party. These are superfluous facts and CTA did not have a chance to challenge them, so the Court cannot consider them.

On April 26, 2006, Berry filed an Application for Adjustment of Claim with the Illinois Workers' Compensation Commission ("IWCC"). (*Id.* ¶ 51.) The arbitrator denied Berry's claim on January 2, 2009, and Berry filed a Petition for Review. (*Id.*) The panel of three commissioners upheld denial of Berry's claim. (*Id.*)

In her deposition, Berry maintained that four similarly situated CTA employees received worker's compensation benefits and therefore were treated better than she was: John Hill ("Hill"), Bernie Morales ("Morales"), Earl Marshall ("Marshall"), and Vincent Mastriani ("Mastriani"). (*Id.* ¶ 54.) According to the CTA's records, Hill, an electrical worker, never filed a compensation claim, nor did he ever receive worker's compensation benefits.[7] (*Id.* ¶ 55.) The CTA awarded worker's compensation benefits to Morales, a carpenter, because the injuries he sustained arose directly as a result of performing his work responsibilities. (*Id.* ¶ 56.) Marshall, a mechanic, filed four worker's compensation claims with the CTA. (*Id.* ¶ 57.) The CTA approved two of the claims (falling off a ladder onto broken glass and getting splashed with hot water from a cleaning tank); the CTA also denied two of the claims (aggressively pulling the bus steering wheel and lifting suspension rods): one for being untimely filed and the other as not work-related. (*Id.* ¶¶ 57, 58, 59, 60.) Finally, the CTA approved worker's compensation claims by Mastriana, a mechanic, because he strained his back while removing a wheelchair lift assembly from a bus, which was work-related. (*Id.* ¶ 61.) He is currently in Area 605 and his worker's compensation claim is open. (*Id.*)

---

[7] Berry's response to this fact that she "cannot admit or deny what records CTA has" does not undermine the CTA's factual statement, so it will be deemed admitted.

C.      **Benefits**

As a member of the Carpenter's Union, while on disability leave Berry was eligible for twenty-six weeks of paid medical leave at $200 per week. (*Id.* ¶ 42.) This paid medical leave is also known as Short-Term Disability ("SD") payments. (*Id.*) From Berry's first absent day from work on January 24, 2006 until August 2006, she received the full amount of SD payments that the CTA offers: $5,200. (*Id.*)

When the CTA placed Berry in Area 605 on February 12, 2008, Wall decided that the CTA would provide Berry with Hospital-Medical Benefits until August 1, 2008. (*Id.* ¶ 45.) While full-time employees in Area 605 are automatically eligible for health insurance for one year after the first day that they are unable to work, Wall allowed Berry to receive two-and-a-half years of health insurance, starting on her first day of absence on January 24, 2006 and extending until August 1, 2008. (*Id.*)

From Berry's first absent day of work on January 24, 2006, until her administrative separation on January 24, 2009, the CTA paid $10,521.25 of medical claims that Berry submitted to the CTA. (*Id.* ¶ 50.) She also received $9,969.18 in Hospital-Medical benefits. (*Id.*)

**STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

9

However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

Berry alleges that the CTA discriminated against her due to her sex and retaliated against her by denying her benefits and worker's compensation, and eventually terminating her. In Berry's Third Amended Complaint she states that the CTA violated Title VII "by terminating Plaintiff Cynthia Berry because of her sex and her opposition to discrimination." (Third Am. Compl. ¶ 10.) She makes no other allegations. And in her EEOC charge, Berry alleges retaliation that resulted in harassment, denial of medical benefits, and termination. (R. 37, Ex. 1.) The EEOC charge also generally alleges sex discrimination.

At the outset, the Court notes that res judicata bars Berry from making sex discrimination or retaliation claims that were raised or could have been raised in the 2006 lawsuit. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Smith v. City of Chicago*, 820 F.2d 916, 917 (7th Cir. 1987) ("[A] final judgment on the merits of an action precludes the parties or their privies from

10

relitigating issues that were or could have been raised in that action."). Berry's factual or legal arguments involving the January 18, 2006 incident and the CTA's response to the incident were directly addressed in the 2006 lawsuit before Judge Conlon and are barred from being relitigated here. (*See* R. 59, Response Brief at 2-4,6-7) (including factual statements identical to those before Judge Conlon in the 2006 lawsuit).

## I.  Hostile Work Environment

Berry argues extensively in her Response Brief that the CTA created a hostile work environment. Specifically, almost her entire argument under the indirect method of discrimination relates to hostile work environment. (R. 59, Response Brief at 13.) This is the first time, however, where Berry has raised such a claim, as neither the EEOC charge nor the Third Amended Complaint even hint at a hostile work environment claim. Berry cannot now "amend [her] complaint through arguments in [her] brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). As such, the Court grants summary judgment for the CTA on Berry's hostile work environment claim.

## II.  Sex Discrimination

Berry claims that after she filed her first EEOC charge on April 7, 2006, she has suffered discrimination based on sex. Specifically, she alleges that the CTA failed to provide her certain benefits and eventually terminated her based on her sex.

"A plaintiff alleging sex discrimination in employment under Title VII can proceed under either the direct method or the indirect, burden-shifting method of *McDonnell Douglas Corp. v. Green*." *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720 (7th Cir. 2008). Under the direct

11

method, the plaintiff must present circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Id.*; *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Similarly, if the plaintiff can show direct evidence of discrimination, namely, "an admission by the decision-maker that his actions were based on the prohibited animus," the direct method is satisfied. *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005). Alternatively, under the indirect method, the plaintiff establishes a prima facie case of sex discrimination if four elements are met: (1) plaintiff is a member in a protected class, (2) plaintiff met the employer's legitimate job expectations, (3) but suffered an adverse employment action, and (4) similarly situated employees not members of the protected class received more favorable treatment. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 772 (7th Cir. 2006). If the plaintiff can establish each of these elements by a preponderance of the evidence, "then the burden shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the adverse employment action taken." *Id.* The plaintiff, however, still has the burden to produce evidence that the defendant's "proffered reason is pretextual." *Id.*

Berry cannot proceed under the direct method. She offers only a few ambiguous comments that Gorman allegedly made while investigating the January 18, 2006 incident to support her claim that the CTA had the direct intent to discriminate. Berry is barred from relitigating the 2006 claims and these statements are also not relevant to her claim here because she has not challenged the hostile work environment (which she can not do), but rather her treatment in Area 605 and her eventual termination from temporary disability three years after the January 18, 2006 incident. Berry admits that she suffered no harassment after June 2006 and she fails to allege any new acts of discrimination or intent. Berry provides no direct evidence that she faced discrimination while she

12

was in Area 605. In fact, the evidence suggests that the CTA provided Berry with ample time to return to work and benefits while she was recovering. Berry was allowed to stay in the temporary disability holding area for the maximum amount of time, and Wall provided Berry health insurance for two-and-a-half years, which is a year-and-a-half longer than the coverage CTA employees automatically receive. The CTA's denial of worker's compensation was before Judge Conlon in 2006 and Berry cannot raise that again here. In any event, Sedgwick, Wall, an arbitrator, and a three-commissioner panel all found the 2006 incident giving rise to the injury was unrelated to work. She therefore must proceed using the indirect method.

Yet, Barry fails under the indirect method also. She cannot illustrate that similarly situated males were treated more favorably, the fourth element of the *McDonnell Douglas* test. She and a comparable employee must be "similarly situated in *all respects*." *Spath v. Hayes Wheels Intern.-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (emphasis added). "Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (2006).

For the indirect method, Berry's Response Brief only argues hostile work environment. In Berry's deposition, however, she mentioned four co-workers who received worker's compensation—Hill, Morales, Marshall, and Mastriana—while she did not. As discussed above, the 2006 case involved the CTA's denial of worker's compensation, and the Seventh Circuit affirmed the district court in dismissing this claim. *See Berry*, 618 F.3d at 692. In this respect, res judicata bars Berry's worker's compensation claim in this case.

13

Berry offers no similarly situated co-workers who received more favorable treatment in terms of medical benefits or time allowed in Area 605, so she waives those arguments. Even considering the merits of the CTA's denial of worker's compensation, the Local Rule 56.1 statements and Berry's Response Brief provide no evidence of similarity between Hill, Morales, Marshall, or Mastriana and Berry. While Berry was a carpenter, she held a position different from Hill, who was an electrical worker, and Marshall and Mastriana, who were both mechanics. (Berry 56.1 Resp. ¶¶ 54-62.) The only similar feature between Berry and any of the identified co-workers is that Morales was a carpenter like Berry. This by itself, however, does not establish that Berry and Morales are similar "in all respects." No facts suggest that Berry and Hill, Morales, Marshall, or Mastriana had the same supervisor, performed under similar standards, and had comparable experience or skill.[8] Thus, under either method, Berry cannot establish a prima facie sex discrimination claim.

In any event, the CTA offered a non-discriminatory, legitimate reason for rejecting Berry's worker's compensation claim—it was not work-related. Morales, Marshall, and Mastriana, the CTA employees who received worker's compensation, all were injured in work-related incidents. First, Morales suffered an injury while making bus repairs when a spark from another employee's welding hit glue vapor and the bus caught fire. (Berry 56.1 Resp. ¶ 56.) Second, Marshall received worker's compensation for injuries resulting from falling off a ladder and getting splashed with hot water from a cleaning tank, both directly related to work. (*Id.* ¶¶ 57, 58.) The CTA denied Marshall's two other claims as non-worked related and untimely. (*Id.* ¶¶ 59, 60.) Finally, Mastriana injured his back removing a wheelchair lift assembly from a bus, which was also a work-related injury. (*Id.* ¶ 61.)

---

[8] Hill also did not receive more favorable treatment than Berry because there is no evidence that he ever filed a worker's compensation claim or received any worker's compensation benefits.

The CTA uniformly rejects all worker's compensation claims unrelated to work. The CTA denied Berry's claim only after an independent third party (Sedgwick) and Wall both found that her injuries were not work-related because they occurred in a break room during a break from work. The IWCC and a panel of three commissioners affirmed this decision.[9] Morales, Marshall, and Mastriana received worker's compensation because their injuries were clearly work-related, while Berry's was not. The CTA's consistent application of this policy is exemplified by the denial of one of Marhsall's claims for not being work-related. The CTA therefore provides evidence that denial of worker's compensation for Berry was unrelated to discrimination.[10]

With respect to Berry's termination, after receiving generous benefits while off work, the CTA guidelines mandated that termination could result from failing to integrate back into the work force in a timely manner, namely within three years of the initial injury. *See, e.g., Valenzuela v. Signode Corp.*, No. 88 C 3301, 1989 WL 88290, at *4 (N.D. Ill. July 28, 1989) (Conlon, J.) (company guidelines required termination of disabled employees as soon as their medical leave of absence expired). This is another indication that the CTA was simply applying its own preexisting policies in a non-discriminatory manner.

Finally, Berry failed to present any evidence of pretext. For the reasons already discussed, Berry has not presented any evidence upon which a jury could find that the CTA intentionally

---

[9] With regard to her claim that sex discrimination resulted in her termination, Berry offers no similarly situated male employee who was treated more favorably. Her sex discrimination claim based on her termination is therefore also invalid.

[10] Although not directly raised by Berry, the Court notes that the CTA provided her with the maximum amount of time that she is allowed to be in Area 605 under the CTA's policies. She did not receive a further extension only because she did not have a valid pending worker's compensation claim. Berry also does not make any specific allegations that her health benefits was inadequate.

discriminated against her. In fact, there is no direct or even circumstantial evidence that Berry faced discrimination in the three years after the January 2006 incident.

As such, because Berry fails to establish a prima facie case of sex discrimination, the CTA offers a legitimate, non-discriminatory reason for its actions, and Berry offers no facts showing pretext, the CTA is entitled to judgment as a matter of law on the sex discrimination claim.

**III.    Retaliation**

Berry also claims that the CTA retaliated against her by terminating her and denying her medical benefits for "opposing discrimination." In other words, Berry contends that as a result of her filing her EEOC charge and lawsuit in 2006, the CTA retaliated against her.[11] Under both the direct and indirect methods, this claim is deficient.

**A.     Direct Method**

To state a claim for retaliation, Berry may proceed under the direct or indirect method. *Rhodes*, 359 F.3d 508. Under the direct method, a plaintiff must show direct or circumstantial evidence of "(1) a statutorily protected activity; (2) an adverse employment action taken by the employer; and (3) a causal connection between the two." *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004); *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). As Berry's filing of the EEOC charge and 2006 lawsuit are protected activities, she satisfies the first element.

With respect to Berry's claim that the CTA deprived her of medical benefits, she offers no specific explanation as to how the benefits she received were inadequate, and similarly, how the

---

[11] Berry never explained how she "opposed discrimination," so the Court assumes the EEOC charge and lawsuit in 2006 are the protected activities at issue.

benefits she received constituted an adverse employment action. According to the undisputed facts, she received a one-and-a-half year extension on health insurance; the CTA also paid her for medical leave and her medical claims. Neither Berry's Local Rule 56.1 factual statements nor Response Brief provide any indication as to why these benefits were inadequate, in either quality or amount, which is insufficient to support the second element. The causal connection requirement is similarly defective. That is, there is a causal link where the adverse action "took place on the heels of the protected activity." *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998). A short amount of time, such as two weeks, between the protected activity and adverse action can create the inference of retaliation. *See Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 939 (7th Cir. 1996); *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (four month span between protected activity and adverse employment action contributed to finding no direct retaliation); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 914, 918-19 (7th Cir. 2000) (three months too long). Here, even assuming Berry could show that she received unfavorable medical benefits, there is no recognizable link between the filing of the EEOC charge and lawsuit in 2006 and the adverse action. She provides the Court with no facts showing that the CTA made decisions to cut her benefits (which the facts do not support) as a direct result of her 2006 legal action.

Likewise, while Berry's allegation that the CTA fired her as a result of her 2006 EEOC charge and lawsuit involves a protected activity and adverse employment action, there is no causal connection between the them. In other words, the causal connection is too attenuated to make a prima facie case of retaliation. Berry filed her EEOC charge on April 7, 2006, and her complaint in federal court against the CTA on July 7, 2006. The CTA terminated her on January 24, 2009, after providing her years of health insurance coverage and allowed her the maximum three-years in Area

17

605. The lapse of time between the protective activities and Berry's termination was about two-and-a-half years, which is far longer than the gap in *Filipovic* (four months) and *Sauzek* (three months), both of which did not satisfy the causal connection element. Moreover, even looking beyond the time period, Berry has offered no basis to believe the termination resulted from her protected activity. In this way, Berry cannot proceed under the direct method for the claim of retaliatory termination. *See McDonnell v. Ciseros*, 84 F.3d 256, 259 (7th Cir. 1996) (dismissing retaliation claim where no allegations linked the protected activity and adverse employment action).

The CTA offered a legitimate, non-discriminatory reason for terminating Berry—exhaustion of the three-year period that she was allowed to be in the administrative holding area, Area 605. (Berry 56.1 Resp. ¶ 53.) The CTA policy allows all full-time employees to remain in Area 605 for a maximum of three years and Berry made no attempts during that time to integrate herself back into the workforce. Adherence to the CTA's policy led to Berry's termination, not any other discriminatory motive. Finally, because Berry provides no facts suggesting this reason is pretext, and there is no basis to infer intentional discrimination, she cannot proceed with her retaliation claim under the direct method.

### B. Indirect Method

Under the indirect method, Berry must show: (1) a statutorily protected activity, (2) satisfactory job performance (3) an adverse employment action despite the satisfactory job performance, and (4) similarly situated employees who did not engage in the statutorily protected activity were treated more favorably. *Rhodes*, 359 F.3d at 508. If these elements are met, the burden of production shifts to the CTA to produce a "legitimate, non-invidious reason for its adverse

action," and if this is satisfied the burden of production shifts back to the plaintiff to show that the CTA's stated reason is pretextual. *Id.*; *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002).

Here, Berry's Response Brief argues that she has a claim under the indirect method for hostile work environment but that claim was raised neither in her EEOC charge nor Third Amended Complaint. And as the Court has already determined, Berry cannot raise such a claim through her Response Brief. Besides the hostile work environment claim, which is invalid, Berry's Response Brief fails to discuss her retaliation claims under the indirect method. Regardless, given the Local Rule 56.1 statements, the Court will analyze under the indirect method the merit of her retaliation claims relating to her termination and denial of medical benefits and worker's compensation.

Like under the direct method, Berry does not present evidence of a prima facie case of retaliation under the indirect method. First, Berry offers no evidence that she satisfactorily performed her job responsibilities as a carpenter. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). This deficiency, by itself, is fatal to Berry's retaliation claim. Second, there is no showing of similarly situated employees who received more favorable treatment. For example, in Berry's deposition she mentioned that Hill, Morales, Marshall, and Mastriana were similarly situated and received worker's compensation while she did not. As the Court has already determined, though, these employees were not sufficiently similar to Berry, and they received worker's compensation because, unlike Berry, their injuries were work-related. This reasoning applies to this retaliation analysis also. Further, Berry's Response Brief and the Local Rule 56.1 facts do not indicate whether Hill, Morales, Marshall, or Mastriana ever filed an internal complaint or lawsuit against the CTA. Only by showing that they never accused the CTA of discrimination can Berry demonstrate that they were treated more favorably because they did not engage in a protected

activity. Finally, Berry offers no other similarly situated employees with respect to retaliation resulting in termination or denial of medical benefits. Berry therefore fails to meet her burden of establishing a prima facie retaliation claim under the indirect method.

The Court incorporates its previous analysis regarding the CTA's legitimate, non-discriminatory reasons for the adverse actions about which Berry complains. In sum, the CTA policy only allowed full-time employees three years in Area 605 before being administratively separated, her injuries were determined by the CTA and neutral arbitrators to be unrelated to work, and Berry cannot show how the health benefits she received were inferior to that offered to others. Nor are these reasons pretextual because Berry offers no basis to believe that is the case. As such, Berry's retaliation claim is unfounded.

## CONCLUSION AND ORDER

For these reasons, the Court grants the CTA's Motion for Summary Judgment.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 25, 2011